Good morning your honors. May it please the court, Elizabeth Dahlstrom on behalf of appellant Melvin Adams. Mr. Adams has brought this appeal today alleging that the district court committed a number of errors in 3582 proceedings that individually and collectively amount to an abuse of discretion. However, the most important error was the district court's treatment of Mr. Adams as a career offender in 3582 proceedings, despite the fact that he was never found to be a career offender by the district court at his original sentencing. I wasn't clear on that. Could you give us the words? I thought the words were, well he's a career offender but. Your honor, in this case the district court recited the pre-sentence report in summary fashion without adopting it or the findings that he was a career offender. At pronouncement of sentence he did not say I find Mr. Adams to be a career offender. He simply said I've thought a lot about this case. I've been aided by the arguments of counsel and Congress or the Sentencing Commission people have seen that the crack guidelines are unduly harsh and based on that I'm going to sentence Mr. Adams to a hundred and fifty months. Then he goes on to say that is based on offense level 27. That is the crack guideline. Notably, the district court never said I find Mr. Adams to be a career offender but I'm going to make a downward departure or a variance. Do you have any authority counsel for the your implied argument that there had to be an express finding? Your honor, it's consistent with the law of this court including Waters which says that the original that the the district court may apply the career offender guideline so long as the district court at the original sentence determined him to be a career offender. It's also consistent with what this court has done for example in Pleasant. In that case the C agreement that stipulated that the defendant was a career offender and when the district court accepted that agreement the district court also adopted the findings and the stipulation contained in that agreement. But Pleasant wasn't found on appeal to be eligible for a reduction. That's correct. That's because the applicable guideline range was determined to be the career offender range. Why shouldn't that be the result here? Because the district court never found that the career offender range applied to Mr. Adams and the law says that the court has to determine whether this is a case where the career offender range was applied and then there was a departure or a variance or whether it's a case where a different guideline was selected altogether and we submit that that's what we have here. The judge decided to apply the drug guideline from the very beginning. No departures, no variances. Let me ask you something about Judge Takasugi's decision. Yes. Because I think Judge Snyder was just doing the limited resentencing based on the change in the crack guidelines if they applied and Judge Takasugi looked at the presentence report and then he made his decision. He said, well, Judge Snyder is 20 years old. He is a career offender and the total offense level is there for inquiries he had for prior and so forth. It looks to me as though that was already established. Why isn't it? I believe you're looking at page 28 of the record and my reading of that section is that he is simply reciting the findings of the presentence report. He is never adopting them as his own. Wasn't there a filing by your client pre-sentencing in which he admitted that he's a career offender? He did not object to the career offender application in the presentence report. However, he did ask the court to disregard the career offender guideline and sentence. Is that another way of saying that he asked the court to deviate? No, Your Honor. He simply asked the court to apply a pre-sentence report. In this case, Judge Takasugi certainly had the power to select the drug guideline instead of the career offender guideline and that's what occurred here. There was a second significant error. So you're saying when Judge Takasugi said he was a career offender, all he was doing was reciting what the pre-sentence report said as opposed to making his own finding? That's correct, Your Honor. In other cases, you'll see that sometimes the district court recites the findings of the pre-sentence report and then has the court's own. In other cases, such as Waters, for example, there was actual objective evidence in the record that the district court applied the career offender guideline because it changed the criminal history category from 5 to 6. So in this court's prior cases, there's always evidence in the record that the district court actually applied the guideline. Not that the parties just agreed to it or not simply that it was found in the pre-sentence report to apply. Oh, forgive me. I didn't mean to interrupt you. Please. It's always, this court has always required a finding by the district court. We've always required a finding? A finding by the district court. Where is your authority for that, Counselor, that we've required a finding? Waters, again, Your Honor, says You said that this would be consistent with Waters, but does Waters require that? I believe it does, Your Honor. Okay, so go ahead. You were going to give me the insight? In Waters, the quote is, The career offender guideline may be applied in 3582 proceedings so long as the court determined at the original sentencing that the defendant was a career offender. This is also consistent with the law that says that career offender designations may not be revisited in 3582 proceedings. So that's quite different than what we were just talking about, which is that you just said that the court has always required a career offender finding. Your Honor, I can find no case, and the government doesn't cite any cases, where on the second prong of 3582, which is where we are here, the court can look to the pre-sentence report or what the parties agreed to over the district judge's actual pronouncement of sentence. All right. Thank you, Counsel. I can understand your reading, and my first thought on reading where Judge Takasugi said he was a career offender was, gosh, the prosecutor could have asked for a clear finding or the defendant could have asked for some clarity that he was just reciting the pre-sentence report. But then when I go over to ER 30, I'm reading the defense lawyer's argument, and the defense lawyer says that what he thinks the different guidelines would be under the new reduction for crack. And then he says the difference here is that he's been bumped up to his offense level to a level 34 from what would be level 27 is the career offender enhancement. And so that's where we are asking this court to exercise its discretion, simply not to impose the career offender enhancement under the guideline advisory and the court simply to go back in ordinary guideline calculation that would happen in November. Now, the way I read that was the defense counsel is saying we're conceding that he's a career offender but requesting the court to exercise his discretion. And it looks to me like the judge did exercise a lot of discretion not to impose the full sentence that could have been imposed, but it looks as though the reason there's no clearer language on whether he's a career offender or not is the defense was conceding that. What am I missing there? Your Honor, it's true that the district court did have wide discretion to decide which guidelines should apply. And instead of applying the career offender guideline and saying I'm going to vary or depart from it, the defense asked him to wholly apply a separate guideline from the beginning. And we submit that that's what this record shows. I don't know if he applied anything, except just cutting it down some, because he thought even though the fellow had a really long rap sheet, he wasn't as bad a fellow as a lot that come before the court. That may be true, Your Honor. Some of the prior convictions were, for example, one gram of crack cocaine. But even so, we submit that in an ordinary case you would see still an application. The judge would say I find Mr. Adams to be a career offender, or I adopt the findings of the pre-sentence report, but I am deciding to vary from it. In this case, the judge simply rejected the career offender guidelines outright and applied the drug guideline, which was offense level 27. And that's what he stated in his pronouncement of sentence. And I see that my time is running out. I'd like to reserve the remainder for rebuttal. Thank you, Ken. Good morning. Jean-Claude Andre, on behalf of the United States. There are three burdens. I need to ask you a preliminary question. Yes, sir. We got what purported to be a 28-J letter from you. Yes, sir. But it really looked like it was a brief responding to the reply brief. That's not allowed. Rule 28-J letters are supposed to be a supplemental authority. That's what they're called. It wasn't. It was an argument. They're limited to 350 words. Your 28-J letter was about twice that long. I get kind of distracted when those in charge of using government coercion to make people obey the rules don't obey the rules themselves. What's going on here? Our apologies, Your Honor. The application notes or the advisory committee notes to Rule 28 say that argument is permitted. And if I made a mistake, then by all means tell me that I did so. But in light of the fact that we cited a number of new cases that were decided after the briefing in this case and responded to defendants' arguments made for the first time in reply, we figured that it was actually more convenient to the court and the court's law clerks to put it in one package as opposed to filing serial letters that would have addressed it each precedent. Don't worry about the court's law clerks. Worry about the court's judges, if I may.  I don't believe so. Well, I guess perhaps our concession that done forecloses the argument in our answering brief. And that's another reason why our letter went on. Sorry, the argument in the answering brief that we don't have jurisdiction to review the discretionary denial? Correct. Yes. So that's off the table. That's off the table, both in this case and in the next case, which I understand the court will call separately. Thank you. But we'll withdraw that argument in both cases. Okay. What's the difference between – I worry that we complete the terms based on – these are two separate prongs and we have to look at them differently. Can you give me your version of how we should view those two differently, based on and applicable to? Absolutely, Judge Christian. The based-on analysis is a back-end analysis that looks at what the court was considering when the court imposed sentence. And so Freeman illustrates that as was pleasant insofar as, in those cases, the defendant was sentenced pursuant to an 11C1C agreement and essentially a guideline range that was stipulated to by the parties. But does the government contest opposing counsel's argument, which is that Judge Takasugi based this sentence on the crack cocaine guideline? No. We concede the point that the sentence was based on the crack cocaine guideline. And that's because the defendant's 2D range in this case was 130 to 162 months. That's the government's excerpts, page 15 and 16. And the defendant got 150 months, which is right in the middle of that range. Okay. And so the defendant satisfies the based-on analysis. I forget which footnote it is, but we concede that point in a footnote in our brief. So can we talk about the applicable to prong? Yes. So the applicable guideline range is a front-end analysis that looks at what the defendant's actual guideline range is. And certainly it would be more convenient if the district court says, the defendant is a career offender, I find him to be as much, and I'm going to use my Kimbrough-Spears discretion to vary away from it down to the 2D range. But in our view, the court should be engaging in a holistic analysis. And in this case, it's actually very easy to do so, insofar as the PSR said the defendant was a career offender. The defendant conceded as much in his sentence. But PSR saying it just means the probation officer is suggesting to the judge that he's a career offender. It is not a finding by the court. What is the clearest language you have, if there's something clearer than what I had discussed with your opposing counsel, showing that there was, in fact, a finding that this fellow Adams was a career offender and his sentence was based on the career offender guideline? Well, if I could pick one, with your indulgence, Judge Klein. I'd like you to pick both. Answer both questions. I don't have anything better than what Your Honor pointed defense counsel to, which is excerpts page 28 and page 30. Those are the best statements that Judge Tagasugi made in this case. I think your opposing counsel had a very good argument that 28 was the judge saying, here's what the pre-sentence report says. I would acknowledge judges, many judges, say I find the facts in accord with the pre-sentence report, except to the extent that I have found otherwise on the disputed points. This judge, I didn't see where he said that. Did I miss it? No, you did not. He did not say that, and so I agree that page 28 is somewhat ambiguous. But when you look at the record as a whole. Is there any better concession language than 30? I would say in government's excerpts page 16, the defendant in his sentencing position conceded that he was a career offender. So that's better in our view than the sentencing transcript, which is excerpts page 30. And so, again, when this court looks at the record as a whole, he was never in dispute that the defendant was a career offender. And the entire pitch from the defense was for the court to exercise its Kimbrough discretion to vary away from it, which it did. And that's why defendant satisfies the first based on inquiry, but not why the defendant satisfies the second applicable to pleasant inquiry in this case. This government excerpt 16, was that before the first sentencing or the second? I believe that was before the first, but I don't want to overstate it. I'm not certain, Your Honor. I guess there's one point that I guess I just would like to flag that relates to defendant's reply brief.  That the government waived its right to rely on the applicable to analysis of pleasant. In our view, this Court's decision in Taniguchi v. Schultz forecloses defendant's arguments insofar as the waiver doctrine will yield when there's an intervening change in law. Pleasant came out, in fact, after the defendant's opening brief and before the government's answering brief. That's one reason why we're, in fact, not waiving, that defendant has waived the arguments in his reply brief. The other reason is that if the claim is purely one of law, then you can't prejudice the other side and it's fair to be raised for the first time. And here we're trying to defend the district court's judgment on an issue of law that the record is fully established on. And therefore, we believe that we can raise the arguments that we raised in our answering brief. If the Court has no further questions, I'm happy to sit down. Your Honors, I would like to just briefly address the argument the government made that you can take a holistic approach and examine the entire record. I would note that the government's brief doesn't provide any legal support for this approach. I agree with you on that. I thought there was no merit to that argument at all, but I'm concerned about going of record 16, this language defendant further concedes that he is a career offender. How do you respond to that? Your Honor, it would be problematic to rely on the positions of the parties at sentencing rather than what the district court actually announced. The positions of the parties sometimes reflect a negotiated position. Sometimes they are responding to something in the PSR. And so it's not always easy to even tell what the parties' positions were. And it's a much more conservative and much more appropriate response and approach to simply look at what the district court actually applied. If I can do that, I mean, you can certainly concede for purposes of argument or say for purposes of argument without conceding, but the language doesn't look like that. Well, Your Honor, our position is, of course, the district court's pronouncement of sentence controls over what the parties said or what the PSR said. I would also note if there's any ambiguity in what the district court meant or said, the government could have appealed that, and they chose not to. Could you draw any distinction between based on and applicable to? Yes, Your Honor. What is the distinction? I listened carefully to your argument. It seems like you're using them the very same way. No, Your Honor. The based on prong, all parties agreed that the sentence was based on the drug guideline. Right. The second prong of 3582 asked this court to find what the applicable guideline range is. So there are cases where a defendant could have a sentence that was based on the drug guideline because that's what the judge departed down to, but where the applicable guideline range would be the career offender range because that was the range that was the starting point before any departures or variances. That's the situation that existed in Pleasant. We submit this situation doesn't exist because the starting range and the end point was always the drug guideline. Regardless of the commentary to 4b-1. Yes. All right? Thank you, Your Honor. Thank you, counsel. The case just argued will be submitted.
judges: Reinhardt, Kleinfeld, Christen